IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVEN RICHARD WEISHORN #312990 | * | |
| Petitioner, | * | |
| v. | * | CIVIL ACTION NO. AW-09-1819 |
| D. KENNETH HORNING, et al., | * | |
| Respondents. | * | |

## MEMORANDUM

Pending is Steven Richard Weishorn's pro se Petition for Writ of Habeas Corpus (Document 1), the State's response and exhibits (Document 8), and Weishorn's reply (Document 9). The Court finds no need for an evidentiary hearing, *see* Rule 8(a), <u>Rules Governing Section 2254 Cases in the United States District Courts</u>; *see also* 28 U.S.C. § 2254(e)(2), and for reasons stated below, will dismiss the Petition with prejudice and deny a Certificate of Appealability.

### Background

The facts supporting Weishorn's March 21, 2003, convictions following a jury trial in the Circuit Court for Baltimore County were summarized in the unreported opinion issued by the Court of Special Appeals of Maryland:

> Nancy Smith testified that she went to the Giant grocery store on Ridgely Road at approximately 8:00 p.m. on 24 July 2002. As she approached the store, she noticed a man seated on a bench facing towards the left side of the entrance. He "[l]ooked very scruffy sitting there." After Smith completed her shopping, she exited the grocery store and observed the same man still seated on the bench. She testified that his "hair was kind of long in the front here, like he really needed a good haircut." In response to the question whether she remembered seeing any facial hair on the man, Smith testified "[n]ot a mustache at that time. Just some like maybe he hadn't shaved for a

couple of days. It was not a big beard of any sort."

As Smith exited the store, she pushed her shopping cart against some metal rails to keep the cart from rolling. She left her cart and, after she obtained her car, drove to the front of the store to pick up her groceries. She "sat there for a few minutes," waiting for someone from the grocery store to help put the groceries in her car. No one appeared so she turned off the ignition, walked around the front of the car and began to load her groceries onto the front passenger's seat.

Smith saw the man who had been sitting on the bench, and whom she identified as appellant, walk over and enter the driver's side of her car. She yelled, "stop, stop" and reached for her pocketbook which was on the front seat. Appellant grabbed the pocketbook and yelled "[l]et go or I will hurt you." Smith and appellant tussled for the pocketbook, but Smith fell away from the car. She testified that she was "afraid to get dragged under the car."

Smith described appellant's appearance and the clothing he was wearing at the time of the car-jacking. She also identified a videotape of the incident. She identified appellant in a photographic array and also identified him in court as the man who stole her car.

During cross-examination, Smith testified that she did not recall seeing any tattoos on the perpetrator's arms at the time of the incident. She testified "[i]t was very quickly when he grabbed my pocketbook." Because appellant wore short sleeves at trial, the tattoos were clearly visible on his arms. Smith testified that appellant's appearance had changed between the crime and the trial, but she testified, "I am sure that he [appellant] is the gentleman, the man who took my car, who carjacked me that night."

Debra Smith, a Giant employee, not related to the victim, testified that, on the evening of the car-jacking, she saw appellant seated on the bench near the store entrance. She described the clothing appellant wore on the night of the incident and described his hair as "darkish grayish," "not all one color," and "kind of long." She also testified that, at the time of the crime, appellant had a "long mustache." She did not notice any tattoos on his arms: Although she stated that, while appellant did not look the same at trial as he did on the date of the car-jacking, she was confident that appellant was the same person she saw sitting on the bench.

Detective Thomas Fanshaw of the Baltimore County Police Department had prepared a photographic array which he showed to the victim who "went through the photographs and immediately started to eliminate people that were not or that she didn't feel was the suspect. Finally, she - it didn't take long. She chose Mr. Weishorn here. She stated that's him."

Paper No. 8, Exhibit 7 at 3-5. On the basis of this evidence, the jury convicted Weishorn of carjacking, robbery, theft, and assault. Paper No. 8, Exhibit 3 at 37. Weishorn, who had an extensive criminal history, was sentenced the same day to serve 30 years in prison for carjacking with all other counts merging for sentencing purposes. *Id*. at 45-46.

On appeal to the Court of Special Appeals, Weishorn, through counsel, argued that:

1. The evidence was insufficient to sustain the convictions;

2. The verdict was against the weight of the evidence; and

3. The trial court impermissibly restricted Weishorn's cross-examination of Detective Fanshaw by not permitting him to introduce the written statement of Nancy Smith.

Paper No. 8, Exhibit 5 at 2; *see also* Exhibit 6. Maryland's intermediate appellate court affirmed Weishorn's convictions on October 27, 2004. Paper No. 8, Exhibit 7. Weishorn's pro se petition for a writ of certiorari requesting review of the three arguments by the Court of Appeals of Maryland was denied by order dated February 11, 2005. Paper No. 8, Exhibits 8 & 9.

On January 17, 2006, Weishorn filed a petition for post-conviction relief in the Circuit Court for Baltimore County, which, as amended and addressed by the court, alleged:

1. Ineffective assistance of trial counsel for failing to:
   a. object to the reference to a third eyewitness at sentencing;
   b. investigate evidence related to the recovery of the victim's car;
   c. move for a judgment of acquittal with sufficient particularity;
   d. articulate a proper basis for relief in a motion for a new trial;
   e. introduce the victim's statement into evidence;
   f. ensure that the jury was instructed properly; and
   g. object to the victim's identifications.

2. Trial court error in:
   a. admitting the victim's identifications into evidence; and
   b. improperly instructing the jury; and

3. Prosecutorial misconduct by requesting a sentence at the top of the guidelines without presenting the guidelines to the court.

*See* Paper No. 8, Exhibits 10-13.

Following a December 4, 2007 hearing, the Circuit Court denied post-conviction relief in an opinion dated May 29, 2008. *Id.,* Exhibits 12 and 13. Weishorn sought leave to appeal, raising the following claims:

1. The post-conviction court failed to make required findings of fact;

2. Trial counsel was ineffective for failing to:
   a. object to the State's reference at sentencing to a third eyewitness who did not testify at trial;
   b. object to the trial court's instructions;
   c. challenge the victim's identifications as unduly suggestive;
   d. make a motion for judgment of acquittal with sufficient particularity;
   e. litigate a motion for new trial effectively;

3. Post-conviction counsel was ineffective for failing to allege that trial counsel
   a. failed to challenge the victim's identification;
   b. failed to investigate and develop evidence related to the recovery of the victim's vehicle;
   c. failed to move for judgment of acquittal with sufficient particularity; and
   d. failed to introduce the victim's statements into evidence; and

4. The trial court erred by:
   a. admitting the victim's identifications into evidence; and
   b. not confirming the sentencing guidelines presented to it by the prosecutor.

*Id*., Exhibit 14. In an unreported opinion dated June 25, 2009, the Court of Special Appeals summarily denied Weishorn's Application for Leave to Appeal. *Id*., Exhibit 15.

Weishorn now raises the following claims in his federal habeas corpus petition:[1]

(1) The trial court committed error by:
    (a) admitting unreliable identification evidence;
    (b) issuing improper instructions to the jury regarding identification evidence and the binding nature of instructions;
    (c) restricting the cross-examination of Detective Fanshaw; and
    (d) denying Weishorn's motion for new trial;

---

[1] Weishorn's claims are hard to discern, as they are buried within pages of prolix narrative. Respondents have set out those claims in an understandable order. *See* Paper No. 8 at 10-11. Respondents did not, however, respond to Weishorn's claim that he should be afforded a hearing because post-conviction counsel did not complete post-conviction review in an expeditious manner, leaving Weishorn only a few days to prepare and file the instant action. Paper No. 2, Petition at 1-2. As previously noted, the Court finds no need for an evidentiary hearing.

(2) The evidence was insufficient to sustain his convictions;

(3) Trial counsel was ineffective for failing to:

    (a) challenge admission of the victim's identifications;

    (b) object to the prosecution's reference at sentencing to a third eyewitness who did not testify at trial; and

    (c) move for judgment of acquittal with sufficient particularity; and

(4) Post-conviction counsel was ineffective for failing to alleging that trial counsel was ineffective for failing to challenge a photo array on the basis that it contained a picture of Weishorn taken six years earlier.

Paper No. 2, attached Petition.

## Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), petitioners for federal habeas corpus relief must exhaust each claim in state court. Exhaustion is achieved by seeking review of the claim in the highest available state court. *See* 28 U.S.C. §§ 2254(b)-(c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal and with other claims by way of a post-conviction petition, followed by petitioning the Court of Special Appeals for leave to appeal. Weishornn no longer has any available state direct review or collateral review remedies available for the claims raised here. His claims will be considered exhausted for this federal habeas corpus review.

## Timeliness

Respondents do not contend - and the record does not show - that Weishorn's petition is time-barred.

## Standard of Review

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).[2] Section 2254(d) also requires federal courts to give great deference to a state court's factual findings. *See Lenz v. Washington,* 444 F. 3d 295, 299 (4th Cir. 2006). Section 2254(e)(1) of the habeas statute provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Using this analysis, the Court now examines Weishorn's claims.

---

[2] Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

## Allegations of Trial Court Error

Weishorn complains that the trial court improperly admitted the victim's identification because statements initially provided to police by the victim and a corroborating witness to the crime concerning the perpetrator's appearance differed greatly and also differed from his in-court appearance and the pretrial photo array used to establish his identity.[3]  Paper No. 9 at 5-6.  He alleges the identification procedures were unduly suggestive and unreliable and that reliance on them violated his due process rights.  Weishorn further argues the photo array, which contained a picture of him taken six years prior to the crime, made misidentification likely.  Paper No. 2 at 10, 18-24 and 35-37.  The post-conviction court examined these arguments and found as follows:

> Petitioner contends that he was denied due process because the pre-trial identification was "procedurally flawed" and "overly suggestive." He also argues that his identification by witnesses at trial was unreliable because he was the only defendant seated at the trial table. In addition, he contends that he received ineffective assistance of counsel because trial counsel did not challenge the photo array - particularly when, according to Petitioner, police used his six (6) year old photo.

> The victim gave a physical description of the suspect after she was carjacked. Two days later, Detective Thomas Fanshaw prepared a photo array containing six (6) photographs including one of the Petitioner's. (Petitioner's Exhibit 3). Ms. Smith met Detective Fanshaw at the Cockeysville police precinct and identified Petitioner from the photo array. She identified him again during the trial. (Joint Exhibit 1, pp. 46-49).

> During cross-examination, trial counsel challenged the reliability of the identification by suggesting that Ms. Smith had a limited opportunity to observe the suspect. Trial counsel also established that the witness failed to mention the existence of any tattoos on Petitioner's arms when she first gave a physical description of the suspect to police. Through questioning, trial counsel also established that the witness failed to give a description of Petitioner's hair color, lips, eye color or scars. (Joint Exhibit 1, pp. 49-54). During the Post Conviction Hearing, Petitioner also testified that the photo used in the array was six (6) years old and that he was somehow prejudiced by the use of the older photo. Trial counsel testified that she

---

[3] Allegations concerning trial counsel's failure to suppress idemtification before and during trial are not addressed in the context of trial court error.

believed that the use of an older photograph in the photo array by police was an advantage to the Petitioner.

> In addition, trial counsel testified that she did not challenge the photo array because she did not have a good faith basis for arguing that the photo array was unduly suggestive or that the detective utilized overly suggestive tactics in obtaining the identification.

> As to Petitioner's contention that his in-court identification was unreliable, there is simply no evidence to support this claim of error. As noted, Ms. Smith gave a description of the suspect, selected his photo from an array two (2) days later and identified Petitioner again during the trial. A second eyewitness identified him during the trial.

> Petitioner has failed to establish error and therefore relief is denied.

Exhibit 13 at 10-11.     The state post-convictiom court's conclusion that admission of the victim's identifications did not violate Weishorn's right to due process does not amount to an unreasonable application of federal law.     As noted by trial counsel during post-conviction review, no information existed to suggest that the process used to obtain the photo array identification process was unduly suggestive or that the victim's identification was unreliable. Exhibit 12 at 90-91. Indeed, Smith testified at trial:

> I looked at these photographs. I wanted to be very clear in thoroughly looking at them to be sure when I looked at them if I recognized anybody familiar to the person who took my car. The detective did not make any indication about any of these people. I looked at these photographs for perhaps a minute or two. I picked one out. I recognized the man who had taken my car. I was very sure of that person.

Paper No. 8, Exhibit 2 at 47-48. Smith also identified Weishorn in court as the person who carjacked her, stating: "I am sure that he is the gentleman, the man who took my car, who carjacked me that night." *Id*. at 48-49. Debra Smith, a store employee, confirmed that she observed Weishorn at the Giant immediately prior to the carjacking. *Id*. at 59-60. Detective Fanshaw discussed the photo array procedure at trial and stated that Smith chose Weishorn's picture quickly without any influence from him. *Id*. at 68-70.

There is no evidence that the six-year-old photo of Weishorn contained in the array made the photo array process unduly suggestive or unreliable. If anything, the use of the older photo likely benefitted Weishorn, as it made it less likely that his picture would be selected by the victim.[4] There is no support in the record that the identifications made by the victim and the store employee resulted from a defective process. The post-conviction court reasonably applied the law in rejecting his claim of error, thus foreclosing relief under 28 U.S.C. § 2254(d). *See e.g., Manson v. Brathwaite*, 432 U.S. 98 (1977); *Neil v. Biggers*, 409 U.S. 188 (1972).

Weishorn next claims the trial court failed to properly instruct the jury because the identification instruction given did not admonish the jury to consider the possibility of misidentificatiom. He contends the court should have directed the jury to consider all the procedures used to conduct the photo array and should have told the jury the court's instructions were not binding. Paper No. 2 at 11-12, 36-41, and 46-47.

Generally, questions of jury instruction are a matter of state law, not cognizable on federal habeas review, unless a specific constitutional issue is implicated that calls into question the Due Process Clause. *See Sandstrom v. Montana*, 442 U.S. 510 (1979). Such an issue is not found here and, accordingly, the claim is not cognizable on federal review. *See* 28 U.S.C. §2254(d); *see also Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

Weishorn further contends the trial court improperly prevented the introduction of the victim's written statement during the cross-examination of Detective Fanshaw, and as a result he was further stymied in his attempts to challenge the accuracy of the victim's identification. Paper No. 2 at 25-30. On direct appeal the Court of Special Appeals rejected this claim as

---

[4] Indeed, trial counsel testified at the post-conviction hearimg that she did not challenge the use of the older photo because it made it less likely that Weishorn's picture would be selected by the victim. Paper No. 8, Exhibit 12 at 90-91, 98.

follows:

At trial, the victim, Nancy Smith, gave the following testimony regarding tattoos on appellant's arms and a written statement she gave to police:

Q. Your testimony is you don't recall any tattoos on the person who carjacked you?

A. He had some things on his arm. I don't know -- I can't say it was those tattoos.

Q. Did you every [sic] describe any tattoos? Pardon?

Q. Did you ever describe any tattoos when the police asked you for a description of the suspect?

A. No, I did not.

Q. You gave a written statement to the police as well, correct?

A. Yes, I did.

Q. Did that include any description of any tattoos?

A. No, it did not.

Q. Did it say that anything else was on his arms?

A. I did not say anything about his arms. I said that he had a white T-shirt on. He had tan pants and work boots.

Appellant did not attempt to introduce in evidence Smith's statement to the police until Detective Fanshaw was on the stand. At that time, the following ensued:

[Defense Counsel]: Did you ever take a statement from Mrs. Nancy Smith, the victim?

[Detective Fanshaw]: Yes, I did.

Q. Do you have that with you?

A. No, I don't.

Q. I would ask you to identify that.

A. Yes.

Q. What is that?

A. That's her written statement.
Q. From?

A. Nancy Smith.

Q. Regarding this incident?

A. Yes.

Q. You took that from her, correct?

A. Yes.

Q. I would ask that this be marked as Defendant's Exhibit Number One and introduced.

[Prosecutor]: I would object.

THE COURT: Counsel approach. (At which time Counsel and the Defendant approached.)

THE COURT: What is the basis of the objection?

[Prosecutor]: It is hearsay.

THE COURT: Mrs. Aist.

[Defense Counsel]: Mrs. Smith said she gave it in writing. The detective identified it as a statement she gave.

[Prosecutor]: Mrs. Aist didn't have the --

THE COURT: Couldn't you have when Mrs. Smith testified if you elected to cross-examine her with regard to this statement?

[Defense Counsel]: I could recall her.

THE COURT: No. You could have done that.

[Defense Counsel]: Yes.

THE COURT: Well, in view of the fact that you didn't, even though the written statement is there, it seems it qualifies as a hearsay statement and not admissible. The out-of-court statement by Mrs. Smith is hearsay unless you can point me to an exception that would be admissible. Otherwise I am going to sustain the objection.

[Defense Counsel]: Okay.

THE COURT: The objection is sustained. The out-of-court statement by Mrs. Smith will not be admitted.

Based on the foregoing, we affirm.

Paper No. 8, Exhibit 7 at 8-11.

Under the Confrontation Clause of the Sixth Amendment, an accused has the right to be confronted with the witnesses against him. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). The right to cross-examination, however, is not unfettered, and trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about…interrogation that is repetitive or only marginally relevant." *Id.*, 475 U.S. at 679. Trial counsel's cross-examination of the victim and Detective Fanshaw was not impaired in any way. Introduction of the victim's statement was offered solely to bolster the fact that the victim did not identify Weishorn's tattoos. Both the victim and Fanshaw admitted this fact, and Weishorn's counsel drove the point home during cross-examination and later in closing argument. Paper No. 8, Exhibit 2 at 74 and Exhibit 3 at 23-29. No harm resulted from the trial court's ruling concerning the admissibility of the victim's statement during the detective's cross-examination. The state appellate court's rejection of this claim stands pursuant to 28 U.S.C. § 2254(d).

Weishorn also claims the trial court erred in denying his motion for new trial based on his claim that the verdict was against the weight of the evidence. Paper No. 2 at 42-43. This state law claim is not cognizable here, and in any event the evidence was sufficient to sustain the verdict for reasons noted below.[5]

---

[5] As noted by the appellate court, Weishorn argued that the verdict was against the weight of the evidence because the victim and Debra Smith did not recall seeing any tattoos on his arms at the time of the incident. In addition, he complains that the victim testified that the perpetrator had no mustache while Debra Smith testified that the man she

## Claim that Evidence was Insufficient to Sustain Conviction

In assessing sufficiency of the evidence to support a criminal conviction, the district court must examine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  It does not matter whether the district judge believes the evidence established guilt beyond a reasonable doubt; instead, the relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id* at 318-319; *see also Wright v. West*, 505 U.S. 277, 296-97 (1992) (reviewing court faced with record of historical facts that supports conflicting inferences must presume, even if it does not affirmatively appear in the record, that trier of fact resolved such conflicts in favor of prosecution, and must defer to that resolution).

Two days after the carjacking and assault the victim, without hesitation, identified Weishorn in a photo array, and subsequently identified him at trial.  A second witness who observed Weishorn at the food store prior to the crime also identified him.  As noted by the appellate court, this identification evidence is sufficient to sustain Weishorn's convictions.  Paper No. 8, Exhibit 7 at 6-8.  Relief is unavailing on this claim.  *See* 28 U.S.C. § 2254(d).

---

saw on the evening of the incident had a long mustache. He maintained on appeal  that because he presented evidence that he normally had a mustache and had tattoos for 8 years, his convictions must be reversed.  The appellate court found that the fact that Weishorn presented the testimony of a witness who said he normally had a mustache and had tattoos for 8 years, did not alter the weight of the evidence in favor of granting a new trial.  The appellate court further noted that the victim, Nancy Smith, testified that she noticed something on Weishorn's arm at the time of the crime but could not recall whether it was the same as the tattoos on his arm at trial. Moreover, Debra Smith did not testify that appellant did not have any tattoos, but rather that she "didn't take notice of any tattoos." As for the testimony concerning appellant's mustache,  the appellate court noted that Debra Smith testified that Weishorn  had a mustache at the time of the incident. The victim's testimony on cross-examination was less clear, but she had testified that her attacker needed a shave and had several days' growth on his face, with part of the growth "a little heavier here."  Paper No. 8, Exhibit 7 at 6-8.

## Ineffective Assistance of Trial Counsel

The right to effective assistance of counsel is protected by the Sixth Amendment. Constitutional ineffective assistance of counsel claims are governed by *Strickland v. Washington,* 466 U.S. 668 (1984).[6] To prevail on a claim of ineffective assistance of counsel, a petitioner must show his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland,* 466 U.S. at 687. To demonstrate actual prejudice, a petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. There exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See id.* at 688-89. A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101(1955)). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

Weishorn first complains that counsel failed to challenge admission of the victim's identifications. As noted above, there was no basis to challenge the process by which the identifications were made; thus, counsel was not required to move to suppress the identifications,

---

[6]The Court reaffirmed and applied these standards in an ineffective assistance of counsel context in *Bell v. Cone*, 535 U.S.685 (2002):

> For respondent to succeed, however, he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. [internal citation omitted]. Rather, he must show [the state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Id.* at 698-9.

and her failure to do so is not deficient.  Trial counsel did her best to undermine the victim's and witness's identifications as unreliable based on their failure to observe his tattoos.  The post-conviction court reasonably determined that counsel's performance was not deficient.  Relief is denied under 28 U.S.C. § 2254(d).

Weishorn next claims counsel failed to object to the prosecutor's reference at sentencing that a third eyewitness identified him as the assailant.  Paper No. 2 at 33-35.  Remarks by the prosecution do not necessarily mandate a new trial, unless they so infect the proceeding with unfairness that the resulting conviction is a denial of due process.  *See Darden v. Wainwright*, 477 U.S. 168 (1986); *United States v. Weatherless*, 734 F.2d 179 (4th Cir. 1994).  In determining whether improper prosecutorial comments so damaged the proceeding as to require reversal, this Court must consider (1) the degree to which the comments are misleading and prejudiced the accused; (2) whether the comments were isolated or extensive; (3) whether competent proof established guilt, irrespective of the comments; and (4) whether the comments were deliberately made to divert attention to extraneous matters.  *See United States v. Harrison*, 716 F.2d 1050 (4th Cir. 1983); *United Staes v. Brockington*, 849 F.2d 872 (4th Cir. 1988); *United States v. Odom*, 736 F.2d 104 (4th Cir. 1984).  Here, the jury had already determined guilt based on the evidence provided by the victim and one eyewitness. Furthermore, the statement was made at sentencing and not in front of the jury.  As noted by the post-conviction court, there was nothing to suggest the statement was untrue, and in any event the sentence wass imposed based on the nature of the offense and Weishorn's extensive criminal history.  Paper No. 8, Exhibit 13 at 8-9 and Exhibit 3 at 45-46.

Counsel did not provide specific grounds in her motion for judgment of acquittal and thus failed to preserve the issue of sufficiency of the evidence as a ground for appeal.  That same

court, however, noted that had the issue been preserved, the evidence proffered at trial was sufficient to sustain the convictions. *See Weishorn v. State,* No. 90, slip. Op. at 1 (Md.Ct.Spec.App. October 27, 2004), Paper No. 8, Exhibit 7 at 6-8. This Court concurs. Weishorn was not prejudiced by this deficiency, and will not be afforded relief here.

### Ineffective Assistance of Post-Conviction Counsel

Weishorn's final claim -- that post-conviction counsel rendered ineffective assistance -- is not a cognizable ground for federal habeas corpus relief. *See* 28 U.S.C. §2254(i); *Coleman v. Thompson*, 501 U.S. 722, 755-57 (1991); *Mackall v. Angelone,* 131 F.3d 442, 445-51 (4th Cir. 1997 (*en banc*).

### Certificate of Appealability

A habeas petitioner has no absolute entitlement to appeal a district court's denial of his motion. *See* 28 U.S.C. § 2253(c) (1). "A [Certificate of Appealability, or "COA"] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at §2253(c) (2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282, (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36, (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).

The Court will not issue a certificate of appealability because Weishorn has not made the requisite showing. Denial of a certificate of appealability does not prevent Weishorn from seeking permission to file a successive petition or pursuing his claims upon receipt of that permission.

The Petition is denied and dismissed.  A separate order follows.

Dated:  May 5, 2010

_____/s/_____
Alexander Williams, Jr.
United States District Judge